NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1558
_____

UNITED STATES OF AMERICA

v.

ANTONIO AVILA,
Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-06-cr-00199-010)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 14, 2011

Before:  RENDELL, SMITH and ROTH, Circuit Judges.

(Opinion Filed: July 28, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Antonio Avila was convicted for various drug charges, criminal forfeitures, and

offenses relating to attempted escape from custody.  Avila only challenges his

convictions which relate to his attempt to escape custody, claiming that the evidence was

insufficient.  He also claims that the government offered insufficient evidence to

overcome the defense of entrapment. Our standard of review for sufficiency of the evidence challenges is plenary, but we will only reverse a jury verdict when the record contains no evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *See United States v. Mussare*, 405 F.3d 161, 166 (3d Cir. 2005). Avila cannot meet this standard. Accordingly, we will affirm.

Avila, along with Fernando Beltran, was convicted of attempted escape from custody and related offenses. The offense conduct originated when Beltran was moved to a cell with Amauris Sanchez. Shortly thereafter, Beltran approached Sanchez about taking part in an escape. Following a number of conversations, Sanchez approached authorities with the intent to cooperate. Sanchez, and Karen Brown, a prison counselor, took on the role of confidential informant for the authorities. At this point, Beltran also approached Avila about joining the operation, and Avila agreed. After a number of discussions between Avila, Beltran, Sanchez, and Brown, an escape plan was crafted based on a medical transport. The plan resulted in bribes to fictitious guards for a smuggled cell phone and their cooperation in the escape. Following the seizure of the second bribe – $40,000 to be used as the bribe to effectuate the actual escape – Avila and Beltran were charged.

Avila's first challenge is that the government failed to offer enough evidence to sustain his conviction for attempted escape from custody. To prove attempted escape, the government must show intent, as well as corroborating evidence which amounts to a substantial step toward commission of the crime. *See United States v. Cicco*, 10 F.3d

2

980, 984 (3d Cir. 1993). The substantial step may be shown through the conduct of a co-conspirator. *See Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946).

Avila claims that the government only offered the testimony of Sanchez, Beltran's cellmate, and in light of the inconsistencies and attacks on Sanchez's credibility, this evidence was insufficient. While the government did offer only Sanchez's testimony, Avila fails to note in his brief that the government also offered numerous recorded phone calls placed by Avila. The calls, in a number of ways, corroborate the fact that Avila was part of the group intent on escaping from prison. One call was to his niece to have a truck registered in a different name to avoid seizure, presumably to be available, either for sale or use during the escape. Also, there were a number of calls in which Avila offered reassurances that everything was going as planned and urged that his co-conspirators could be trusted. Finally, one of his co-conspirators took the substantial step to pay the sums of $3,000.00 and $40,000.00 to fictitious guards for the use of a cell phone and for general bribes to facilitate the escape. A reasonable jury could find Avila guilty beyond a reasonable doubt of this charge.

As for Avila's second claim, that the government failed to show that Avila used interstate facilities to aid in bribery, it must also fail. To prove the crime, the government must show (1) the use of an interstate facility; (2) with the intent to promote an unlawful activity; and (3) a subsequent overt act in furtherance of the unlawful activity. *See United States v. Zolicoffer*, 869 F.2d 771, 774 (3d Cir. 1989). It is sufficient for the government to show that a person believed he was conferring a benefit, and the government need not prove there were actual prison guards willing to accept the bribes.

3

*Commonwealth v. Schauffler,* 580 A.2d 314, 317-18 (Pa. Superior Ct. 1990). Avila's bald claim that the government failed to offer sufficient evidence lacks any further explanation or support. As the government produced evidence that Avila, and co-conspirator Beltran, arranged for the transfer of money via U.S. mail for the purpose of furthering their plan, and in fact, the money was sent, it is clear that the guilty verdict was appropriate when viewed under the applicable standard of review.

Finally, Avila claims that insufficient evidence was offered to overcome the defense of entrapment. To prove the defense of entrapment, the defendant must show (1) that the government induced the defendant to commit the crime, and (2) that the defendant lacked the predisposition. *United States v. El-Gawli*, 837 F.2d 142, 145 (3d Cir. 1988). Avila's argument assumes that he sustained his burden as to these elements, but he failed to show a lack of predisposition. Avila claims that he was not predisposed to escape and bribery, and, therefore, he was entrapped. He points to his lack of criminal history and Sanchez's statement at trial that he "took some convincing." The government urges that these statements were out of context. At trial, the government produced testimony by Sanchez stating that Beltran approached him numerous times about the plan which Avila and Beltran were already discussing. These discussions occurred prior to Sanchez's becoming a confidential informant and the government's involving the prison counselor. Additionally, there are at least two corroborating statements made by Avila before government involvement, in recorded phone calls to women about seeing them "one of these days" and "I'll call you when I am out." Also, Avila stated in another recorded call that he would call the woman on the line "before, um, we are gonna go."

4

Again, as we view the evidence in a light most favorable to the government, there was sufficient evidence in the record for a reasonable jury to conclude that Avila was predisposed to escape, dooming his entrapment defense.

Accordingly, we will affirm.